## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 15 |
| | § | |
| Q'MAX SOLUTIONS INC., | § | |
| | § | Case No. 20-34791 (MI) |
| | § | |
| Debtor in a Foreign Proceeding. | § | |
| | § | |

## RECEIVER'S <u>EMERGENCY</u> VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON [_____] AT [_____] (CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN [_____].

PLEASE NOTE THAT ON MARCH 24, 220, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.

IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.

YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON ON THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES & SCHEDULES," THEN "VIEW HOMEPAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT "Q'MAX SOLUTIONS INC.", COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

KPMG Inc. ("KPMG"), solely in its capacity as court-appointed receiver and manager ("Receiver" or "Foreign Representative") of Q'Max Solutions Inc. ("QSI" or the "Debtor") and certain other related Canadian entities pursuant to the *Consent Receivership Order* dated May 28, 2020 (the "Receivership Order"), entered by the Court of Queen's Bench of Alberta in Judicial Centre of Calgary, Alberta, Canada, Court File No. 2001-06722 (the "Canadian Court" and the "Canadian Proceeding") pending under Canada's Bankruptcy and Insolvency Act ("BIA"), and as authorized foreign representative of the Debtor, respectfully submits this chapter 15 verified petition (together with the official form petition filed concurrently herewith, the "Petition") for recognition of the Canadian Proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") and respectfully requests (a) recognition of the Canadian Proceeding as a foreign main proceeding, or, in the alternative, as a foreign nonmain proceeding; (b) recognition of the Receiver as the foreign representative of the Debtor; and (c) additional and related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

In support of the Petition, the Foreign Representative has filed contemporaneously herewith (a) the *Declaration of Receiver in Support of (A) Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code, and (B) Receiver's Emergency Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 105(A) and 1519 of the Bankruptcy Code* (the "Receiver Declaration") and (b) the *Declaration of Foreign Counsel* (the "Osler Declaration"; and together with the Receiver Declaration, the "Supporting Declarations"), which are incorporated herein by reference.

## I.    PRELIMINARY STATEMENT

1.      The Debtor is a Canadian parent company that, directly or indirectly, owns certain regional operating, formerly operating, and non-operating entities organized and conducting

business in Canada, the United States, Mexico, Colombia, the Middle East, and Africa (collectively, and as more fully described below, the "Q'Max Group"). The Q'Max Group provides oilfield services focused on onshore and offshore drilling fluids, solids control, and waste management solutions in the upstream oil and gas drilling and producing industry, and services customers in Canada, the United States, and around the world. In addition to ownership interest in the Q'Max group, QSI owns certain intellectual property rights licensed to operating entities within the Q'Max Group and serves as guarantor and contracting parent company for other agreements, such as shared services contracts, for the benefit of the Q'Max Group family of companies.

2.      In addition to predating liquidity issues, the Q'Max Group, like most other oilfield services companies, was profoundly impacted by depressed oil and natural gas pricing and a corresponding reduction in rig and drilling activities resulting from the Saudi Arabia-Russian pricing war and the COVID-19 pandemic. On May 27, 2020, as a result of certain credit defaults, the Agent (defined below) filed its application seeking appointment of the Receiver for QSI, its Canadian subsidiaries—QCO, QSH, and 135 Alberta (each defined below)—and parent holding company Fluid Holding (defined below), pursuant to the BIA. Subsequently, on May 28, 2020, the Receiver was appointed pursuant to the Receivership Order by the Canadian Court to preside over the estates of the Canadian Debtors (defined below). Separately, in part as a result of a separate lending facility with unrelated lenders and in conjunction with an intercreditor agreement, two U.S.-formed entities in the Q'Max Group—QAI and Anchor (each defined below; collectively the "U.S. Debtors")—filed for chapter 7 bankruptcy relief in this District.

3.      The Receivership Order provides similar rights, powers, and duties to the Receiver as those afforded to a liquidating trustee under the Bankruptcy Code, including total control over

the estates and assets of the Canadian Debtors, a stay of all collection activities and legal actions against the Canadian Debtors, and authority to seek recognition and comity with respect to the order.

4.      Accordingly, the Receiver—in consultation with the Agent (defined below)—files the Petition and seeks the full extent of protections afforded by chapter 15 of the Bankruptcy Code to facilitate the ongoing administration of the Canadian Proceeding and to assist the Receiver in carrying out its duties set forth in the Receivership Order.  This chapter 15 case serves an important function in supporting the Receiver's full and fair administration of the QSI estate (and, by extension, the other Canadian Debtors' estates and entities in the Q'Max Group) for the benefit of all creditors in accordance with the BIA and operative Canadian law, including by recognition of the stay of proceedings set forth in the Receivership Order and as permitted by section 362 of the Bankruptcy Code with respect to two pending civil actions against QSI and any future collection activities in the United States.  For the reasons set forth herein, the Receiver respectfully submits that the relief requested in the Petition is necessary and appropriate for the benefit of the Debtor, its creditors, and other parties in interest.

## II.      RELIEF REQUESTED

5.      The Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) granting the Petition and recognizing the Canadian Proceeding as a "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code), or, in the alternative, as a "foreign nonmain proceeding" (as defined in section 1502(5) of the Bankruptcy Code), and granting all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b) of the Bankruptcy Code, (b) recognizing the Foreign Representative as a "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code, (c) finding that the Petition meets the requirements of section 1515 of the

Bankruptcy Code, (d) granting all relief afforded to a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, subject to certain modifications described herein, (e) granting additional relief pursuant to section 1521 of the Bankruptcy Code; (f) providing that no action taken by the Foreign Representative in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Canadian Proceeding, any order entered in respect of the Petition, this chapter 15 case, any further order for additional relief in this chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded to the Foreign Representative, including, without limitation, pursuant to section 1510 of the Bankruptcy Code, and (g) granting such other relief as the Court (as defined herein) deems just and proper.

## III.     JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).  The Debtor, by and through the Receiver, confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

7.      This chapter 15 case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing the Petition pursuant to section 1515 of the Bankruptcy Code.

8.      Venue is proper pursuant to 28 U.S.C. § 1410(2).

9.      The basis for the relief requested herein are sections 105(a), 362, 363, 1504, 1507, 1510, 1515, 1517, and 1521 of the Bankruptcy Code.

## IV.     REQUEST FOR EMERGENCY RELIEF

10.     Pursuant to Bankruptcy Rule 6003, within twenty-one (21) days immediately following the commencement of a case, the court is empowered to grant relief "to the extent that

4811-7615-4059v.9

relief is necessary to avoid immediate and irreparable harm."  For this and the reasons stated herein, and in accordance with Local Rule 9013-1(i), the Receiver respectfully requests emergency consideration of the Petition.

11.     Contemporaneously with the filing of this Petition, the Receiver has filed the *Receiver's Emergency Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "TRO Application"). The Receiver has requested emergency consideration of the TRO Application. If granted, the relief requested in the TRO Application would only extend for the first fourteen (14) days of these Chapter 15 cases. Accordingly, the Receiver requests consideration of the Petition on less than twenty-one (21) days' notice so that the Receiver can obtain an extension of any relief granted in connection with the TRO Application and continued legal authority and control over the Debtors' assets located in the United States so as to avoid loss and to maximize the potential return to creditors. Furthermore, "[a] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." 11 U.S.C. § 1517(c).

12.     By separate motion, the Receiver seeks emergency provisional relief under Bankruptcy Code sections 1519 and 105(a) until such time as the Court considers this Petition. Prior to entry of a recognition order, the Debtor does not benefit from the protections of the Bankruptcy Code, including the automatic stay provisions.  Accordingly, the Receiver submits that the Court should exercise its discretion in this matter to assure an economical, expeditious, and equitable administration of the Debtor's estate consistent with the Receivership Order. Without such emergency provisional relief, the Debtor will be exposed to the risks and costs of litigation and other actions against it, which is in violation of the stay provided in the Receivership

Order and in contravention of the Receiver fulfilling its duties under applicable Canadian law, and thus threatens the Receiver's efforts to maximize value for the benefit of creditors.

V.     <strong><u>RELEVANT BACKGROUND</u></strong>

**A.**     <u>**QSI's Business and Corporate Structure**</u>

13.     QSI, the foreign debtor hereby seeking recognition under chapter 15, is a British Columbia corporation that is extra-provincially registered in Alberta, Canada.  Prior to recent events, the Debtor, by and through the Q'Max Group, provided oilfield services focused on onshore and offshore drilling fluids, solids control, and waste management solutions in the upstream oil and gas drilling and producing industry.  The Q'Max Group's customers include(d) national oil companies, major international energy companies and independent exploration and production companies in Canada, the United States, Mexico, Colombia, the Middle East and Africa.

14.     The Debtor is 100% owned by Fluid Holding Corp. ("<u>Fluid Holding</u>"), which is also a British Columbia corporation that is extra-provincially registered in Alberta, Canada.  The Debtor is the primary parent entity to the currently or formerly operating and non-operating regional companies in the Q'Max Group, holding direct or indirect ownership interests in the Q'Max Group of companies, owning intellectual property licensed by certain of the Q'Max Group entities, and entering into guarantees and other shared services agreements to the benefit of the Q'Max Group.  QSI's ownership interests in each of the entities in the Q'Max Group is set forth on the *Corporate Ownership Structure and Control Chart*, attached as Exhibit A to the Receiver Declaration.  The direct or indirect subsidiary entities relevant to this proceeding are as follows:

- With Fluid Holding and QSI, the "<u>Canadian Debtors</u>":

    - **Q'Max Canada Operations Inc.** ("<u>QCO</u>"), is a British Columbia corporation with a registered office in British Columbia and being

7

extra-provincially registered in Alberta, Canada, conducting its business in Canada;

- o **1356760 Alberta Ltd.** ("135 Alberta") and **Q'Max Solutions Holdings Inc.** ("QSH") are Alberta, Canada corporations with registered offices in Calgary, Canada, conducting their business in Canada;

- The non-debtor "Global Operating Companies": **Central Procurement Inc.** ("CPI"); **Q'Max Mexico, S.A. de C.V.** ("Q'Max Mexico"); **Environmental Solutions for Petroleum Services – Free Zone – S.A.E.** ("Environmental Solutions"); **International Drilling Fluids & Engineering Services Co. (IDEC) Ltd.** ("IDEC"); **United QMax Drilling Fluids Company Co.** ("Kuwait JV"); and **QMax Arabian Oil & Gas Services Co.** ("Saudi JV"); and

- The "U.S. Debtors": **Q'Max America Inc.** ("QAI") and **Anchor Drilling USA, LLC** ("Anchor") are Delaware corporations conducting business in the United States, including Texas.[1]

15. When operational, the Debtor maintained a Canadian headquarters at Suite 1700 – 407 2nd Street SW, Calgary, Alberta. Its business and registered offices were located in Canada. Prior to the terminations/resignations immediately preceding the U.S. Debtors' filing for chapter 7 bankruptcy relief, QSI's directors and officers resided in the United States and were, with one exception,[2] employed by QSI in those respective capacities. Since entry of the Receivership Order, the Receiver has exercised complete control of the Debtor.[3] QSI does not presently employ any officers, directors, or employees. All services required by QSI are provided by the Receiver or third parties employed by the Receiver.

16. In recent months, the business of the Q'Max Group was negatively impacted by depressed oil and natural gas pricing and a corresponding reduction in rig and drilling activity. Such negative impacts were exacerbated by public health restrictions in response to the COVID-19

---

[1] For clarity, the "Q'Max Group" collectively refers to the Canadian Debtors, the Global Operating Companies, and the U.S. Debtors.
[2] QSI's former Vice President of U.S. Operations was employed by Anchor.
[3] A true and correct copy of the Receivership Order is attached as Exhibit C to the Osler Declaration and is incorporated herein for all purposes.

pandemic.  Demand for the Q'Max Group's products and services thus declined to the detriment of the Q'Max Group's earnings.

17.     As of this filing, the Receiver has determined that QSI and the other Canadian Debtors will not be sold as going concern businesses.  Accordingly, all of QSI's executives and other employees have been terminated.  QSI's continued function, by and through the Receiver, is limited to liquidation of its interests in the Canadian Debtors, sale of the Global Operating Companies as going concern businesses, to the extent commercially feasible, and liquidation of any remaining QSI assets for the benefit of QSI's creditors pursuant to the Receivership Order and operative law.[4]

**B.      The Q'Max Group Credit Agreement**

18.     QSI, QCO, and QAI, as borrowers (the "Borrowers"); and HSBC Bank Canada, as administrative agent ("HSBC" or "Agent") for certain Lenders,[5] entered into a credit agreement in May 2014, which has been amended and restated and supplemented by various amending agreements (collectively, the "Credit Agreement").  Thereunder, the Agent alleges that, as of May 5, 2020, the total indebtedness of the Borrowers to the Lenders, inclusive of interest, was approximately (a) USD $145,381,623.21 plus CAD $1,228,668.47; (b) outstanding letters of credit in the amounts of USD $3,916,296.42 and CAD $1,161,408.79; and (c) other outstanding credit card balances, plus accrued and accruing costs and disbursements, and interest continuing to accrue per diem (collectively, the "Indebtedness").

---

[4] The U.S. Debtors, as explained below, are chapter 7 debtors and thus undergoing a liquidation process separate from the Canadian Proceeding.

[5] The Agent acts on behalf of a syndicate of predominantly Canadian based lenders, currently comprised of HSBC, Bank of Montreal, Business Development Bank of Canada, Export Development Canada and HSBC Bank USA (collectively, and in such capacity, the "Lenders").  The Borrowers and Lenders are collectively referred to as the "Loan Parties".

19.     Each of QSI, QSH, 135 Alberta, QCO, QAI, and Anchor have executed unlimited guarantees of the Indebtedness.  Fluid Holding has granted a limited recourse guarantee in favor of the Agent.  Further guarantees of the Indebtedness have been granted by other non-Canadian and non-U.S. members of the Q'Max Group.

20.     Among other security and collateralization, general security agreements (the "GSAs") were granted to secure amounts advanced under the Credit Agreement by QSI, QSH, 135 Alberta, QCO, QAI, and Anchor, which provide first-priority security interests on all or substantially all of the grantors' assets.

21.     Furthermore, a separate credit agreement (the "U.S. Credit Agreement") was entered between QAI, as holding company, and Anchor, as borrower; and Encina Business Credit, LLC ("Encina"), as administrative agent on behalf of certain lenders.  Pursuant thereto, Encina asserted that the U.S. Debtors defaulted under the U.S. Credit Agreement and owed in excess of USD $23,884,000.  On September 6, 2019, the Agent and Encina, as ABL agent, entered into that certain *Intercreditor Agreement* (the "Intercreditor Agreement"), the purpose and effect of which was to subordinate a portion of the Agent's security to security held by Encina in respect of funds owing under the U.S. Credit Agreement by the U.S. Debtors.  Notably, there is no overlap between the lenders to the U.S. Credit Agreement and the Lenders to the Credit Agreement.

## C.     The Canadian Receivership Proceeding

22.     On May 12, 2020, following approximately two years of extensive unsuccessful restructuring negotiations, the Agent, on behalf of the Lenders, issued to the Borrowers a demand letter that included notices of intention to enforce security under section 244(1) of the BIA and to accelerate the Indebtedness under the Credit Agreement.  On May 27, 2020, as expressly permitted by the GSAs, the Agent filed an *Application for Appointment of a Receiver* seeking the appointment of KPMG as receiver under section 243(1) of the Bankruptcy and Insolvency Act,

R.S.C. 1985, c, B-3, section 13(2) of the Judicature Act, R.S.A. 2000 c J-2 (the "<u>Judicature Act</u>"), and 65(7) of the Personal Property Security Act, R.S.A. 2000, c P-7.

23.     On May 28, 2020, the Honorable Justice Grosse for the Canadian Court entered the Receivership Order pursuant to section 243 of the BIA and section 13(2) of the Judicature Act.

24.     The Receivership Order appointed the Receiver over the estates of the Canadian Debtors.  The Receivership Order specifically authorizes the Receiver to act "as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." (Receivership Order ¶ 31).  It empowers and authorizes the Receiver to take numerous steps involving the property of the entities subject to the Canadian Proceeding. (Receivership Order ¶ 3).  The Receivership Order grants the Receiver access to all of the Debtors' books, records, contracts, securities, and information. (Receivership Order ¶¶ 4-6).  Additionally, the Receivership Order imposes a stay of initiation or continuation of proceedings against the Receiver, the Debtor, and/or the other Canadian Debtors and their respective estates. (Receivership Order ¶¶ 7-11).

25.     The Receivership Order also grants the Receiver a charge (the "<u>Receiver's Charge</u>") on all of the Canadian Debtors' current and future assets, undertakings, and properties of every nature or kind whatsoever, and wherever located, including all proceeds thereof (collectively, the "<u>Property</u>") to secure payment of the reasonable fees and expenses of the Receiver and its counsel, not to exceed CAD $1,000,000 (or such greater amount as the Canadian Court may by further order authorize).  (Receivership Order ¶ 18).  The Receiver's Charge has the priority set forth in paragraph 18 of the Receivership Order.

26.     The Receivership Order further authorizes the Receiver to borrow, by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or

desirable, provided that the outstanding principal amount does not exceed CAD $8,000,000 (or such greater amount as the Canadian Court may by further order authorize) on the terms authorized therein. (Receivership Order ¶ 21). The Canadian Court grants a charge (the "Receiver's Borrowings Charge") on the Property to secure payment of the monies borrowed, together with interest and charges thereon, by the Receiver pursuant to the Receivership Order.

27. Consistent with section 14.06(1.2) of the BIA, the Receivership Order provides that "[t]he Receiver shall not be liable for any employee-related liabilities, including any successor employer liabilities . . . , other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act* . . . ." (the "Receiver's Protections"). (Receivership Order ¶ 14).[6]

28. The Receivership Order includes a request by the Canadian Court for "aid and recognition of any court . . . having jurisdiction in Canada or in any foreign jurisdiction . . . , to give effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." (Receivership Order ¶ 30).

**D.** **U.S. Debtors' Chapter 7 Proceeding**

29. On May 24, 2020, the U.S. Debtors—QAI and Anchor—filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, jointly pending at Case No. 20-60030-CML (the "Chapter 7 Proceeding").

---

[6] Section 14.06(1.2) of the BIA provides:

> Despite anything in federal or provincial law, if a trustee, in that position, carries on the business of a debtor or continues the employment of a debtor's employees, the trustee is not by reason of that fact personally liable in respect of a liability, including one as a successor employer,
>
> (a) that is in respect of the employees or former employees of the debtor or a predecessor of the debtor or in respect of a pension plan for the benefit of those employees; and
>
> (b) that exists before the trustee is appointed or that is calculated by reference to a period before the appointment.

4811-7615-4059v.9

30.     On May 24, 2020, the United States Trustee appointed Christopher R. Murray, as the chapter 7 trustee (the "Trustee").  On June 3, 2020, the Trustee filed a motion to, *inter alia*, approve a stalking horse bidder sale agreement and bid procedures [Dkt. No. 74].

31.     On July 1, 2020, the Court entered an order approving the sale of a portion of the U.S. Debtors' assets, principally including operations in the Northeast United States, to Paragon Integrated Services Group LLC ("Paragon") for the sum of USD $7,200,000, plus assumption of the remaining Encina debt.  As described in the July 23, 2020 *Trustee's Status Report*, the Trustee anticipates that the remainder of the U.S. Debtors' assets will be liquidated by December, 2020. *See* Case No. 20-60030, Dkt. No. 273.

**E.     Pending U.S. Civil Actions**

     **(1)     *Intellectual Property Dispute***

32.     On April 6, 2018, M-I L.L.C. d/b/a M-I Swaco ("M-I") filed in the United States District Court for the Southern District of Texas  an action against QSI, QAI, and Sanjit Roy ("Roy"; and collectively with QSI and QAI, the "Defendants") alleging copyright infringement, misappropriation of trade secrets, and conversion against all Defendants (and additional causes against former employee Roy) based on M-I's assertion that the Defendants infringed on M-I's intellectual property rights through QSI's creation and ownership of a product named MAXSITE Hydraulics ("MAXSITE").   *See* Civ. A. No. 18-cv-01099 (S.D. Tex. 2018) (S. Lake) (the "MAXSITE Action").   M-I argues that Roy, upon leaving his employ at M-I, unlawfully maintained copies of the source code for Virtual Hydraulics and Presspro RT (the "M-I Software"), software that M-I developed for oil and gas drilling, and, upon joining QAI in April, 2015, used the M-I Software to design MAXSITE.

33.     In relevant part, on November 18, 2019, the Defendants filed their motion for summary judgment, seeking summary relief with respect to M-I's copyright infringement claim [Dkt No. 128] ("Defendants' MSJ").

34.     On August 6, 2020, Judge Sim Lake entered his *Memorandum Opinion and Order* (the "MSJ Order"), which, among other things, granted the Defendants' motion for summary judgment and dismissed with prejudice M-I's copyright claim against QSI and QAI.  The MSJ Order held that M-I failed to identify any protectable non-literal elements of its copyrighted work and failed to show evidence that protectable portions of the source code were important enough to M-I's overall program to render MAXSITE substantially similar to them.  *See* MSJ Order, Case No. 18-cv-01099, Dkt. No. 146.

35.     The MSJ Order also dismissed without prejudice QAI as defendant on account of the Chapter 7 Proceeding and operation of the automatic stay.  The MAXSITE Action continues based on the remaining counts against QSI and Roy.

36.     The Receiver has approached M-I, by and through counsel, and M-I has been unwilling to recognize the stay set forth in the Receivership Order.

**(2)     *The Guarantor Action***

37.     On September 17, 2020, plaintiff Atlas Energy Tower LLC ("Atlas") filed its *Plaintiff's Original Complaint* against defendant QSI in the District Court of Harris County, Texas, seeking an award of damages against QSI based on QSI's alleged breach of a *Guaranty Agreement* executed by QSI relating to tenant QAI's occupancy of Level 2 of the office building known as Energy Tower I (the "Guarantor Action").  *See* Cause No. 2020-57316 (127th Dist. Ct., Harris County).  Atlas seeks judgment in the amount of more than USD $3 million, plus interest, attorney's fees and expenses.

**F.**       **Receivership Status and Pending Sales Processes**

38.       As explained above, the Receiver was appointed approximately four (4) months prior to filing the Petition.  In that time, the Receiver has spent significant time analyzing the books and records of the Canadian Debtors, the Global Operating Companies, and many additional non-operating QSI subsidiary entities to assess the assets and liabilities of the Q'Max Group.  In connection therewith, the Receiver has engaged in a comprehensive marketing and sale process in Canada and in the relevant regional markets in order to maximize value for the respective creditors and stakeholders.

39.       To date, the Receiver has determined that it is not commercially feasible to sell QSI and/or the other Canadian Debtors as going-concern businesses.  Accordingly, a liquidation process is underway.

40.       Conversely, the Receiver believes that one or more of the Global Operating Companies should be sold as an operating business or businesses, and the Receiver continues to facilitate operations—by and through parent company QSI—and market the entities accordingly. Moreover, for various business reasons, the Receiver has determined that any sale of the Global Operating Companies must be conducted as a sale of the respective entities' equity interests, which are held in whole or in significant part by QSI.  Therefore, any sale of QSI's equity interests in the Global Operating Companies, by operation of Canadian law, will be completed with full notice to QSI creditors and must be approved by the Canadian Court.  It is contemplated that the MAXSITE intellectual property will be licensed as part of any going concern sale, to the extent allowed by the Canadian Court and operative law.  The Receiver believes that the rights to MAXSITE are owned by, and only by, QSI, except as licensed to various affiliated and/or third parties.

41.       Although the Receiver has and will continue to take steps to maximize value to the fullest extent possible in connection with fulfilling its fiduciary obligations under the Receivership

Order and Canadian law, it does not project under the current and foreseeable market conditions that the Q'Max Group will return amounts sufficient to make a distribution to unsecured creditors.

## VI.   <u>RELIEF REQUESTED</u>

42.   The Receiver hereby respectfully requests the Court enter an order pursuant to sections 105, 1507, 1517, 1520 and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order, providing the following relief:

- Recognition of the Canadian Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code, or, in the alternative as a foreign nonmain proceeding as defined in section 1502(5) of the Bankruptcy Code;

- Granting the Receiver the relief afforded under section 1520 of the Bankruptcy Code as is provided by right upon the recognition of the Canadian Proceeding as a foreign main proceeding;

- Granting further additional relief as authorized by section 1521 of the Bankruptcy Code including, without limitation:

   o   Staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of the Debtor, including any action or proceeding against the Receiver, in its capacity as such, and/or the Debtor, to the extent not stayed under section 1520(a) of the Bankruptcy Code;

   o   Staying execution against the assets of the Debtor to the extent not stayed under section 1520(a) of the Bankruptcy Code;

   o   Suspending the right to transfer or otherwise dispose of any assets of the Debtor to the extent not suspended under section 1520(a) of the Bankruptcy Code by any person or entity other than the Receiver unless authorized in writing by the Receiver or by Order of this Court;

   o   Granting comity to, and final recognition and enforcement of, the Receiver's Charge, the Receiver's Borrowing Charge, and the Receiver's Protections;

   o   Providing that in accordance with sections 105(a), 345(b), and 363(c), the Debtor's existing cash management systems and procedures and the deposit agreements between the Debtor and their existing depository and disbursement banks (collectively, the "<u>Banks</u>") shall continue to govern the postpetition cash management relationship between the Debtor and the Banks;

16

o     Providing for the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtor, and finding that such information is required in the Canadian Proceeding under the law of the United States; and

o     Entrusting the administration or realization of all or part of the assets of the Debtor within the territorial jurisdiction of the United States to the Receiver.

- Otherwise granting comity to and giving full force and effect to the Canadian Court, the Canadian Proceeding, and the Receivership Order; and

- Awarding the Receiver such other and further relief as this Court deems just and appropriate.

43.    The Receiver respectfully submits that the Canadian Proceeding should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code, or, in the alternative as a foreign nonmain proceeding as defined in section 1502(5) of the Bankruptcy Code, and requests that, to the extent not afforded as a matter of right by other provisions of chapter 15, the Court grant the relief requested above under the Court's discretion pursuant to section 1521 of the Bankruptcy Code.

44.    Contemporaneously herewith, the Receiver will file a motion requesting provisional relief pursuant to section 1519 of the Bankruptcy Code.  The Receiver reserves all rights to seek recognition of the concurrently and jointly pending Canadian Proceeding for the other Canadian Debtors.  As of this filing, the Receiver has determined, based on the existing creditor makeup, pending sales processes, and pending litigation, that seeking recognition of the Canadian Proceeding for Fluid Holding, a non-operating holding company, and the other Canadian Debtors that do not conduct business in the United States and are presently liquidating is not necessary or cost-efficient.

4811-7615-4059v.9

## VII.   <u>BASIS FOR RELIEF</u>

45.     Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts, to protect and maximize the value of a debtor's assets, and to facilitate the rehabilitation and reorganization of businesses.  The relief afforded to a foreign debtor under chapter 15 is intended to avoid disruptions that could otherwise derail a debtor's restructuring in its home country.

46.     Consistent with these principles, the Receiver, as Foreign Representative, commenced this ancillary proceeding for the Debtor under chapter 15 of the Bankruptcy Code to obtain recognition of the Canadian Proceeding, specifically including the Receivership Order, and certain relief consistent with Canadian law and protections afforded by the Bankruptcy Code.  The Receiver believes that this chapter 15 case will complement the Debtor's primary proceeding in Canada to ensure the effective and economic administration of the Debtor's estate (and those of the related Canadian Debtors) and prevent parties from taking action in the United States that would jeopardize these efforts.

## A.      <u>The Debtor is Eligible for Chapter 15 Relief.</u>

47.     The Debtor is eligible to be a debtor in a chapter 15 proceeding.  For the purposes of chapter 15 of the Bankruptcy Code, a "debtor" means an entity that is the subject of a foreign proceeding.  *See* 11 U.S.C. § 1502(1); *see also* 11 U.S.C. § 101(15), (41) (defining "entity" and "person").  The Debtor is organized under the laws of Canada.  As set forth below, the Canadian Proceeding is a foreign proceeding as that term is defined in the Bankruptcy Code.  The Debtor does not fall within any of the categories of entities excluded from chapter 15 eligibility, as set forth in section 1501(c).  Accordingly, the Debtor is eligible for relief under chapter 15 of the Bankruptcy Code.  *See* 11 U.S.C. § 1501(b), (c).

4811-7615-4059v.9

**B.**     **The Canadian Proceeding Qualifies for Recognition Under Chapter 15.**

48.     Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain) proceeding if (1) such foreign proceeding is a foreign main (or nonmain) proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a).  As explained in more detail below, the Canadian Proceeding, the Foreign Representative, and the Petition satisfy each of the foregoing requirements.

    **(1)**     ***The Debtor's General Disclosures***

49.     A petition for recognition of a foreign proceeding under chapter 15 of the Bankruptcy Code must (a) state the country where the debtor has its center of main interests, or COMI, and (b) identify each country in which a foreign proceeding by, regarding, or against the debtor is pending.  Fed. R. Bankr. P. 1004.2(a) (herein, the "Rule(s)").  As verified in the Debtor's Official Form 401 Petition and evidenced in the Receiver Declaration, the Debtor's center of main interests (discussed below) is in Canada, where the Canadian Proceeding is pending, where the Debtor and other Canadian Debtors are organized, and where the Q'Max Group (save for the U.S. Debtors' assets) will be sold, by and through the Receiver, in one or more transactions.

50.     A foreign representative filing a petition for recognition under chapter 15 shall file with the petition a corporate ownership statement containing the information described in Rule 7007.1.  Fed. R. Bankr. P. 1007(a)(4).  Such a corporate ownership statement has been filed contemporaneously herewith.

51.     A foreign representative filing a petition for recognition under chapter 15 shall file with its petition (unless the court orders otherwise), a list containing the names and addresses of

all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.   Fed. R. Bankr. P. 1007(a)(4).   A Rule 1007(a)(4) list has been filed contemporaneously herewith.

52.     Moreover, the Petition is properly filed in this Court pursuant to 28 U.S.C. §  1410(1) and (2).  Among other things, the Debtor owns—through an intermediary subsidiary company—100% of the equity in the U.S. Debtors, and is a defendant in the MAXSITE Action and the Guarantor Action, each pending in Houston, Texas.  The Debtor is not, as of this filing and to the best of the Receiver's knowledge, a party to any other litigation pending in the United States.

### (2)     *The Receivership Order Satisfies Section 1515*

53.     A petition for recognition shall be accompanied by any of the following:

(1)     A certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)     A certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)     In the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

54.     In compliance with 11 U.S.C. § 1515(b), a true and correct copy of the Receivership Order from the Canadian Proceeding, which may be presumed authentic, is appended to and was filed with the Petition.[7] 11 U.S.C. § 1516(b).

---

[7] Based on reduced staffing and other pandemic-related issues affecting services, a "certified" copy of the Receivership Order could not be timely obtained, noting that delivery time is 8 to 10 weeks from ordering.

4811-7615-4059v.9

**(3)** **_The Canadian Proceeding is a Pending "Foreign Proceeding"_**

55.    Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as:

A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

56.    The Canadian Proceeding satisfies the definition of "foreign proceeding."  Here, the affairs of the Debtor are "under a law relating to insolvency" through the BIA, and "subject to control or supervision by a foreign court for the purpose of reorganization or liquidation" through the appointment of the court-appointed Receiver.

57.    The BIA is one of two pieces of federal legislation in Canada applicable to bankrupties and insolvencies.[8]  The BIA governs both voluntary and involuntary bankruptcy liquidations and provides for debtor reorganizations.

58.    The BIA also authorizes the appointment of a court-appointed receiver upon a secured creditor's application.  BIA at § 243(1).  Such court-appointed receivers are given a mandate and specific powers as set out in the order appointing the receiver.  These duties include: (a) taking possession and control of the property and assets of the debtor; (b) marketing and selling such property and assets in a commercially reasonable manner (whether as a going concern, en-bloc, or otherwise) and under the supervision and approval of the appointing court; and (c) distributing the proceeds of such sales to the stakeholders in accordance with the legal entitlement. The appointing court has broad discretion to authorize the receiver to "take any other action that the court considers advisable." _Id_. § 243(1)(c).

---

[8] The second federal legislation in Canada concerning insolvencies is the _Companies' Creditors Arrangement Act_ ("CCAA"), which affords financially troubled corporations the opportunity to restructure their financial affairs through a "Plan of Arrangement."  _Companies' Creditors Arrangement Act_, R.S.C. 1985, c. C-36 (Can.).  The CCAA process is akin to chapter 11 of the Bankruptcy Code, affording companies an opportunity to restructure operations rather than liquidate. _See In re Fracmaster, Ltd._, 237 B.R. 627, 629 n.3 (Bankr. E.D. Tex. 1999).

59.     Under the BIA, a court-appointed receiver is a "national" receiver, with the ability to administer assets in each of Canada's ten (10) provinces and three (3) territories, typically without further order of provincial courts.  The BIA and its related legislation the CCAA are federal legislation.  Provincial legislative jurisdiction governs property and civil rights, potentially affecting some insolvency-related matters, similar to the interplay between state and federal law in the United States.  Nonetheless, the BIA provides a statutory framework for a court-appointed receiver to carry out its mandate on a national basis without reliance on the various provincial statutes or courts for its authority.

60.     Pursuant to the Judicature Act, courts in Alberta are authorized to appoint a receiver when it is "just and convenient" on any terms and conditions the Alberta court deems to be just. Moreover, the Judicature Act codifies broad equitable powers of the court which allows it to provide for certain remedies, including the appointment of a receiver, where equitable. The powers and duties of a court-appointed receiver, pursuant to section 13(2) of the Judicature Act, is set out in the order appointing the receiver and may be tailored to the specific circumstances. Generally, such powers and/or duties will be the same or similar to a receiver appointed under the BIA as noted above.

61.     United States courts have historically recognized cases filed under Canada's federal bankruptcy and insolvency statutes, the BIA and the CCAA.  *See, e.g., Tradewell, Inc. v. American Sensors Elecs., Inc.*, No. 96 CIV. 2474(DAB), 1997 WL 423075, at *1, n. 1 (S.D.N.Y. July 29, 1997) (noting that the "CCAA is a broad statute, the purpose of which is to provide insolvent debtors with the opportunity to restructure their financial affairs with their creditors.") (internal quotations omitted).  Moreover, since the passage of chapter 15, cases filed under Canada's insolvency schemes have consistently been recognized as "foreign proceedings."  *See, e.g., In re*

*BOS Solutions LTD.*, No. 20-32465, ECF 41 (Bankr. S.D. Tex. May 19, 2020); *In re Technicolor S.A.*, No. 20-33113, ECF 59 (Bankr. S.D. Tex. July 31, 2020); *In re Entrec Corporation, et al.*, No. 20-32643, ECF 36 (Bankr. S.D. Tex. May 29, 2020)*; In re Calmena Energy Servs. Inc.*, No 15-30786, ECF No. 17 (Bankr. S.D. Tex. March 5, 2015) (recognizing Canadian BIA receivership proceeding as foreign proceeding).[9]

62.     Accordingly, the Canadian Proceeding is a qualifying "foreign proceeding."

**(4)    *The Receiver is a "Foreign Representative"***

63.     Section 1517 of the Bankruptcy Code requires that a qualifying "foreign representative" apply for recognition of the foreign proceeding.  Section 101(24) of the Bankruptcy Code defines "foreign representative" as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

64.     The Receiver may serve as the "foreign representative" because it constitutes a "person or body."  "Person" is defined under section 101(41) of the Bankruptcy Code to include an individual, partnership or corporation. 11 U.S.C. § 101(41).  Because the Receiver is an incorporated entity, it thus qualifies as a "person" and can accordingly serve as a "foreign representative."  The Receiver has been specifically authorized in the Canadian Proceeding to act

---

[9] For other examples of U.S. courts recognizing Canadian insolvency proceedings as "foreign proceedings," *see In re Eagle Energy Inc.*, Case No. 19-33868-15, ECF No. 35, ¶ J (Bankr. N.D. Tex. Dec. 5, 2019) (finding that Canadian receivership proceeding under section 243 of the BIA, RSC 1985 c B-3 and section 13(2) of the Judicature Act, RSA 2000 c J-2 was a "foreign proceeding"); *In re Poseidon Concepts Corp.*, No. 13-15893, ECF No. 60 (Bankr. D. Colo. May 15, 2013) (recognizing a CCAA proceeding as a foreign proceeding); *In re Nortel Networks, Inc.*, 469 B.R. 478, 487 (Bankr. D. Del. 2012) (stating the Court had previously entered an Order recognizing the proceeding under the CCAA was a foreign main proceeding under chapter 15 of the Bankruptcy Code); *In re Metcalfe & Mansfield Alternative Invests.*, 421 B.R. 685, 688 (Bankr. S.D.N.Y. 2010) ("It is clear that the Canadian Proceedings should be recognized as a foreign main proceeding."); *In re Gandi Innovations Holdings, LLC*, 09-51782-C, 2009 WL 2916908, at *1 (Bankr. W.D. Tex. June 5 2009) ("[T]he CCAA Proceeding is a foreign proceeding entitled to recognition under Chapter 15 of the Code.").

as the Debtor's foreign representative. (Receivership Order ¶¶ 30-31).   Additionally, the Receivership Order specifically states, "[t]he Receiver shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order . . . ." (Receivership Order ¶ 31).

65.     Therefore, the Court may presume that the Receiver is a proper "foreign representative."   *See* 11 U.S.C. § 1516(b).   Additionally, courts have previously considered a receiver appointed pursuant to section 243(1) of the BIA to be a duly authorized "foreign representative." *See, e.g., In re BOS Solutions LTD.*, No. 20-32465, ECF 41 (Bankr. S.D. Tex. May 19, 2020); *In re Calmena Energy Services Inc.*, No 15-30786, ECF No. 17; *In re ATK Oilfield Transportation Inc.*, No. 16-70042, ECF No. 44 (Bankr. W.D. Tex., April 1, 2016); *In re Baronet U.S.A. Inc.*, No. 07-13821, ECF No. 15 (Bankr.  S.D.N.Y. Jan. 1, 2008); *In re Innova Global Ltd.*, No. 19-10653, ECF 54 (Bankr. N.D. Okla. April 19, 2019).

66.     For these reasons, (a) the Canadian Proceeding is a foreign proceeding under the definition of 11 U.S.C. § 101(23); (b) the Receiver is a foreign representative under the definition of 11 U.S.C. § 101(24) and is a person under the definition of 11 U.S.C. § 101(41); and (c) the Petition meets the requirements of section 1515; namely, the evidence of the foreign proceedings and the foreign representative has been provided.[10]   (*See* Receivership Order).   Accordingly, the requirements for recognition of the Canadian Proceeding as a foreign proceeding are satisfied.

---

[10] The term "person" includes individual, partnership, and corporation 11 U.S.C. § 101(41).

4811-7615-4059v.9

C.     **The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding, or, Alternatively, as a Foreign Nonmain Proceeding.**

(1)     ***The Canadian Proceeding is as a Foreign Main Proceeding because Canada is the Location of the Debtor's Center of Main Interests.***

67.     A foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the COMI exists.  11 U.S.C. § 1517(b).  COMI is not a defined term in the Bankruptcy Code; however, it has been equated with a debtor's principal place of business.  *See Bear Stearns*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007) (citing *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 633–34 (E.D. Cal. 2006)).

68.     Courts have developed five (5) non-exhaustive factors in the determining a debtor's COMI: (1) the location of those who actually manage the debtor; (2) the location of the debtor's headquarters; (3) the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or the majority of creditors affected by the case; and (5) the jurisdiction whose law would apply to most disputes.  *See Lavie v. Ran* (*In re Ran*), 607 F.3d 1017, 1023 (5th Cir. 2010) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

69.     The first factor is commonly referred to as the "nerve center" or "principal place of business" test.  *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, (2010) (nerve center is where the corporation's high level officers direct, control, and coordinate the corporation's activities).

70.     Canada is the Debtor's nerve center because it is a liquidating enterprise that is organized in Canada, is controlled by the Receiver (located in Canada), and does not have any executives or other employees (thus having no present management outside of Canada).  *See, e.g., In re Gandi*, 2009 WL 2916908, at *2 ("While the evidence regarding center of main interest is mixed, the court finds that the 'nerve center' for the [Debtors] is [in] Canada…the court concludes

that, in these circumstances, the court should find that the center of main interests for [a Texas incorporated entity] should be Canada.") (Unpublished disposition); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("[T]he court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."); *In re British Am. Isle of Venice, Ltd.*, 441 B.R. 713, 720 (Bankr. S.D. Fla. 2010) ("[I]n analyzing COMI courts have drawn a parallel to the 'nerve center' analysis described in [Hertz Corp.]").   More specifically, as of this filing, the Debtor has been in receivership for approximately four (4) months and is in the midst of an advanced sale and liquidation process in the Canadian Proceeding.   The Receiver submits that the first factor establishes Canada as the Debtor's COMI.[11]

71.   The remaining factors also require finding that Canada is the Debtor's COMI. The Debtor's headquarters is best described as of this filing as the office of the Receiver in Canada; and, as explained above, the Debtor's prior headquarters and its address for service of process were located in Alberta and British Columbia, respectively. The Debtor's principal assets and liabilities are also located in Canada, including its (a) ownership interest in the equity of the Q'Max Group, which includes Canadian, U.S. and other international entities; (b) contractual rights, most of which were executed in Canada and are subject to Canadian law; (c) rights to the MAXSITE and certain other intellectual property; and (d) its obligations under the Credit Agreement and to other Canadian creditors, among others.   With respect to the last point, amounts owed under the Credit Agreement represent the vast majority of the Debtor's outstanding obligations.   The Credit

---

[11] Even if the first factor requires examining the Debtor's location of management prior to entering receivership, the "nerve center" analysis would be unchanged or at best inconclusive.  Although QSI's pre-liquidation officers and directors resided in the United States, they were employed by QSI and thus conducted business by and through a Canadian entity; QSI's immediate parent company, Fluid Holding, is a Canadian entity; and QSI controlled one or more Canadian operating entities that actively conducted business in Canada.  *See, e.g., In re BOS Solutions LTD.*, No. 20-32465, ECF 41.

Agreement is governed by the laws of the Province of Alberta and the federal Laws of Canada; the Agent is a Canadian financial institution with offices in Alberta, including branch offices in Calgary; and all but one of the present Lenders in the syndicate are Canadian entities.[12] (*See* Credit Agreement, section 13.3).

72.     Accordingly, the Receiver respectfully contends that the facts overwhelmingly support a finding that the Canadian Proceeding is a foreign main proceeding.  *See In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (finding COMI in Canada notwithstanding the fact that two standards – the location of the debtors' creditors and applicable law – yielded inconclusive results); *In re Gandi*, 2009 WL 2916908, at *2 (finding mixed factors for COMI, but finding that as "nerve center" for Canadian debtor group was in Canada and Texas incorporated entity was controlled through Canada that COMI for entity was in Canada).

**(2)**     ***Alternatively, the Canadian Proceeding is as Foreign Nonmain Proceeding.***

73.     In the alternative, if this Court concludes that the Canadian Proceeding is not a foreign main proceeding, the Canadian Proceeding should be recognized as a foreign nonmain proceeding pursuant to section 1502(5) of the Bankruptcy Code.

74.     A "foreign nonmain proceeding" is defined as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." *See* 11 U.S.C. § 1502(5); *see also* 11 U.S.C. § 1517(b)(2) (providing that an order of recognition as a "foreign nonmain proceeding" shall be entered "if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending").   An establishment is "any place of operations where the debtor carries out a nontransitory economic activity."   11 U.S.C. § 1502(2).   "Nontransitory economic activity" is not defined in the

---

[12] Canadian-organized Lenders are owed nearly 91% of the amounts outstanding under the Credit Agreement.

Bankruptcy Code, but has been referred to as 'a local place of business.'" *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that in order to have an establishment in a country a debtor must "conduct business in that country."); *see also Lavie v. Ran*, 607 F.3d 1017, 1027 (5th Cir. 2010) (holding that the definition of establishment requires "a place from which economic activities are exercised on the market (i.e. externally), whether the said activities are commercial, industrial or professional."); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y 2007) (holding that the requirements of a "place of operations" from which "economic activity" is conducted require a seat for local business activity that has a local effect on the markets); *In re British Am. Ins. Co.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) (holding same).

75.     When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied. *See, e.g., SPhinX*, 351 B.R. at 122.

76.     Based upon the facts set forth above, the Debtor has an undeniable "establishment" in Canada, and, therefore, the Receiver submits that recognition as a foreign nonmain proceeding is, at least, warranted.

## VIII.   REQUEST FOR RELIEF RELATED TO RECOGNITION

### A.     Automatic Relief Afforded in a Foreign Main Proceeding.

77.     The Bankruptcy Code provides as a matter of right, upon recognition of a foreign proceeding as a "foreign main proceeding" the following:

(1)     sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2)     sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

(3)      unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4)      section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

78.      Accordingly, pursuant to 11 U.S.C. § 1520(a), the Receiver seeks entry of an order confirming applications of the delineated provisions of the Bankruptcy Code, including but not limited to the automatic stay provision of section 362.

**B.**      **Automatic Relief Applicable Whether or Not a Foreign Proceeding is Main.**

79.      Certain additional relief is automatic upon recognition of a foreign proceeding, whether main or nonmain.  Upon recognition of a foreign proceeding, the foreign representative may intervene in any proceedings in a State or Federal court in the United States in which the debtor is a party.  11 U.S.C. § 1524.  Upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending under another chapter of this title to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724 (a) of the Bankruptcy Code.  11 U.S.C. § 1523(a).  Accordingly, for reasons set forth herein, the Receiver seeks relief to the fullest extent available pursuant to section 1523(a) and 1524.

**C.**      **Discretionary Relief Whether or Not a Foreign Proceeding is Main.**

80.      Certain discretionary relief is also available upon recognition, in any form, of a foreign proceeding under 11 U.S.C. § 1521.  The court may grant relief under section 1521 only if the interests of the creditors and other interested parties, including the debtor, are sufficiently protected. 11 U.S.C. § 1522(a).  The Receiver contends that the discretionary relief requested, as described below, is necessary (to the extent not already granted by section 1520(a)) for the benefit and protection of the Debtor and the affiliated Canadian Debtors' creditors and parties-in-interest.

81.     "Any appropriate" discretionary relief is available upon recognition of a foreign proceeding, whether or not a foreign proceeding is main. 11 U.S.C. § 1521(a) ("Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief").  In granting relief under 11 U.S.C. § 1521 to a representative of a foreign nonmain proceeding, the court must be satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding. 11 U.S.C. § 1521(c).  That relief includes:

(1) Staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2) Staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3) Suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

(6) extending relief granted under section 1519(a); and

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

82.     In addition, under 11 U.S.C. § 1521(b), upon recognition of a foreign proceeding, whether main or nonmain, the court may entrust the distribution of all or part of the debtor's assets located in the United States to the Foreign Representative, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.  Accordingly, the Receiver seeks all relief available pursuant to section 1521(a) of the Bankruptcy Code in order to carry out its responsibilities described in the Receivership Order.

**D.     To the Extent Applicable, the Receiver's Requests Qualify for Injunctive Relief.**

83.     Pursuant to section 1521(e), relief granted pursuant to section 1521(a)(1) (concerning staying of proceedings); (a)(2) (concerning staying execution against the debtor's assets); (a)(3) (concerning suspending the right to transfer, encumber or otherwise dispose of any assets); and 1521(a)(6) (concerning extending relief granted under section 1519(a)), require satisfaction of the standards for injunctive relief.

84.     As an initial matter, the Receiver contends that the injunctive standards need not be satisfied because equivalent relief should be granted as a matter of right pursuant to section 1520(a) of the Bankruptcy Code.  However, to the extent relevant, the standards are satisfied.

85.     The factors for injunctive relief as stated in *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979), are discussed below.

**(1)     *A substantial likelihood of success on the merits***

86.     In the event the Canadian Proceeding is recognized as a foreign nonmain proceeding, the Receiver also submits that there is a substantial likelihood that the Court will determine that the relief requested in the Proposed Order is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor or the interests of the Debtor's creditors pursuant to section 1521(a) of the Bankruptcy Code.

31

87.     Discretionary relief under 11 U.S.C. § 1521 is routinely granted upon recognition of a foreign proceeding.  For instance, courts commonly approve stays,[13] approve debtor-in-possession financing,[14] and apply section 365 of the Bankruptcy Code.[15]  Furthermore, a grant of discretionary relief under section 1521 of the Bankruptcy Code would promote uniformity in the administration and disposition of the Debtor's assets and would be consistent with the policies underlying the Bankruptcy Code.  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985) (stating that "promoting uniformity in bankruptcy administration" is a goal of bankruptcy adjudication, in the context of a motion to withdraw the reference); *see also In re Vitro S.A.*, 701 F.3d 1031, 1044 (5th Cir. 2012) (stating that "one of Chapter 15's goals [is] the furtherance of cooperation between domestic and foreign courts in cross-border insolvency cases.").  Accordingly, the Receiver submits that the requested discretionary relief under 11 U.S.C. § 1521 has a substantial likelihood of being granted. *See, e.g., In re Rede Energia S.A.*, 515 B.R. 69, 91-92 (Bankr. S.D.N.Y. 2014) ("Chapter 15 thus provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity."); *Gandi Innovations*, 2009 WL 2916908 at *2 ("The court finds that it is necessary to effectuate the purposes of this chapter and to protect the assets of the debtor and the interests of creditors by granting appropriate relief [under section 1521]").

---

[13] *See, e.g., In re BOS Solutions LTD.*, No. 20-32465, ECF No. 41 (Bankr. S.D. Tex. May 19, 2020); *In re Technicolor S.A.*, No. 20-33113, ECF No. 59 (Bankr. S.D. Tex. July 31, 2020); *In re Entrec Corporation, et al.*, No. 20-32643, ECF No. 36 (Bankr. S.D. Tex. May 29, 2020); *Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 596-97 (S.D.N.Y. 2012). S*ee also In re Calmena Energy Svcs. Inc.*, No. 15-30786 (Bankr. S.D. Tex. Mar. 5, 2015), ECF No. 17.

[14] *See, e.g., In re Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Crystallex Int'l Corp.*, No. 11-14074 (Bankr. D. Del. Apr. 26, 2012), ECF No. 111; *In re Biltrite Rubber (1984) Inc.*, No. 09-31423 (Bankr. N.D. Ohio Apr. 2, 2009), ECF No. 58; *In re Rock Well Petroleum Inc.*, No. 08-20802 (Bankr. D. Wy. Feb. 9, 2009), ECF No. 70.

[15] *See, e.g., Essar Steel Algoma*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Newsat Ltd.*, No. 15-10810 (Bankr. D. Del. May 29, 2015), ECF No. 113; *In re Qimonda AG*, No. 09-14766 (Bankr. E.D. Va. Nov. 19, 2009), ECF No. 180.

(2)     *A substantial threat of irreparable injury if the injunction is not issued*

88.     To the extent necessary to effectuate liquidation of the Canadian Debtors, sale of the Global Operating Companies, and to otherwise complete its duties set forth in the Receivership Order, the Receiver continues to operate QSI and/or oversee operations of the Q'Max Group through QSI.  Without injunctive relief recognizing the Receiver's authority in the United States per the Receivership Order, including the staying of the MAXSITE Action and the Guarantor Action, the Receiver will be frustrated from performing its duties, and the value of the Debtor's assets could be jeopardized. *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors.").

89.     To permit the Receiver to fulfill its obligations to the Canadian Debtors' estates, the Receivership Order provides for substantially similar powers and protections pursuant to Canadian law as those afforded to a chapter 7 trustee under the Bankruptcy Code.  Among others, the Receiver's Charge, the Receiver's Borrowings Charge, the Receiver's Protections, the stay of all collection activities akin to 11 U.S.C. § 362, and the grant of specific authority for the Receiver to seek international recognition of the Receivership Order provides the Receiver with vital powers to maximize value for all rightful creditors.

90.     Without recognition and enforcement of the Receivership Order to the fullest extent permitted by chapter 15, the Receiver will be unable to fully discharge its duties to all creditors, specifically including direct negative impact to the Receiver's ability to sell QSI's equity interests in the Global Operating Companies for maximum value and causing the Receiver to expend finite

33

resources to defend actions that are intended to be stayed by the Receivership Order and by operation of Canadian law.[16]

      **(3)**    ***That the threatened injury to the movant outweighs any damage the injunction might cause to the opponent***

    91.    Any threatened injury to the Debtor outweighs any damage the injunction might cause to opponents. The requested section 1521 relief, if granted, would benefit the Debtor's creditors, as a whole, by ensuring an orderly distribution of assets by and through the Canadian Proceeding, including the contemplated sale(s). *See, e.g., In re Basis Yield Alpha Fund (Master)*, Case No. 07-12762 (Bankr. S.D.N.Y. 2007), Dkt. No. 5 (stating that failing to issue a restraining order against creditors could, *inter alia*, "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors."). Moreover, QSI creditors and interested parties will receive proper notice and have the ability to participate in the Canadian Proceeding—or, as applicable, this proceeding—to protect any rights they may have with respect to QSI.

      **(4)**    ***The injunction will not disserve the public interest***

    92.    Finally, the requested relief will not disserve the public interest. To the contrary, granting the relief serves the public interest because it sets to facilitate a cross-border process that will provide a benefit to all rightful creditors of the Debtor. *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

---

[16] Notably, the Receiver attempted to avoid the costs associated with seeking chapter 15 relief, but files at this time based on various recent circumstances, including but not limited to the ruling in favor of QSI and QAI via the MSJ Order, the related dismissal of QAI, the subsequent insistence by M-I to continue with the suit against QSI, and the filing of the Guarantor Action.

93.     For the above stated reasons, the relief sought is necessary and appropriate, in the interest of the public and international comity, consistent with the United States public policy, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief.  In the event that the Court finds that the Canadian Proceeding is a foreign nonmain proceedings, the relief requested herein is still appropriate because the relief may be, and should be, granted in the discretion of the Court.[17]

94.     Accordingly, to the extent necessary, the Receiver submits that the Court should exercise its discretion in this matter to assure an economical, expeditious, and equitable administration of the Debtor's estate consistent with the Receivership Order.  Without such relief, the Debtor will be exposed to the risk and costs of litigation and other actions against it, which is in violation of the stay provided in the Receivership Order, in contravention of the Receiver fulfilling its duties under applicable Canadian law, and thus threatens the Receiver's efforts to maximize value for the benefit of creditors.

## E.     No Bond

95.     The Receiver respectfully suggests that no bond be required under Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 7065(c).  A temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c). Fed. R. Bankr. P. 7065.  The Receiver, who is carrying out its duties under the BIA, the Judicature Act, and the Receivership Order, is akin to a trustee, and any bond would necessarily come from the Debtor's assets.

---

[17] Courts have found that it is not required that an adversary proceeding be filed and served on all parties in interest in order to obtain injunctive relief available under chapter 15. *See, e.g., In re Ho Seok Lee*, 348 B.R. 799, 801 (Bankr. W.D. Wash. 2006) (adversary proceeding not required for Chapter 15 injunctive relief).

**F.**   **Comity**

96.     Where a court grants recognition, and subject to any limitations that the court may impose consistent with the policies engrained in chapter 15, a court in the United States shall grant comity or cooperation to the foreign representative. 11 U.S.C. § 1509(b)(3).   Consistent with section 1501 of the Bankruptcy Code, the court is required to cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee. 11 U.S.C. § 1525(a).   Accordingly, the Receiver seeks comity and cooperation of this Court with respect to the Canadian Proceeding and, specifically, the Receivership Order.

97.     A central tenet of chapter 15 is the importance of comity in cross-border insolvency proceedings.  *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012).  The Supreme Court defined comity as follows:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *see also Vitro* 701 F.3d at 1043-44.

98.     The exceptions to comity are construed especially narrowly when the foreign jurisdiction is like Canada, a sister common law jurisdiction with procedures akin to those in the United States.  *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976) (finding that clear and convincing evidence of fraud is required to successfully attack a foreign judgment; the court held that it would contravene the public policy of New York and the doctrine of comity not to recognize the Canadian judgment in these circumstances); *see also In re Petition of Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) (stating that "Courts in the United States uniformly grant comity to

Canadian proceedings" and noting that Canada is a sister common law jurisdiction with the United States).

99.     The extension of comity to Canadian orders has continued since the 2005 enactment of chapter 15.  *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698-99 (extending comity to Canadian CCAA order providing for a third party release and citing numerous cases where American courts have extended comity to Canadian judgments); *Raymond Chabot Inc. v. Serge Cote Family Tr. & Pub. Storage*, No. 6:14-CV-03392-MGL, 2014 WL 4198831, at *3, n.1 (D.S.C. Aug. 22, 2014) (entering temporary restraining order assisting Canadian bankruptcy receiver and noting "the widely-accepted view that Canadian judgments are entitled to recognition and enforcement here"); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012) (bankruptcy court enforced Canadian court stay from in CCAA noting "the question here is not whether this Court should grant a stay in the first instance, but whether should accord comity and deference to the stay orders entered by the Alberta Court.  The Court concludes that in light of the comity principles laid out above, the Court must defer to the procedures set forth in the Canadian Proceedings and enforce the stay.").  Accordingly, the Receiver requests that the Court grant comity to, and final recognition and enforcement of, the Receivership Order.

100.     Moreover, the Bankruptcy Court for the Southern District of Texas has recognized the importance of comity in chapter 15 proceedings.  *See* Guidelines for Communication and Cooperation between Courts in Cross-Border Insolvency Matters, General Order 2019-2 (the "Cross-Border Guidelines").  For example, the Cross-Border Guidelines provide that: "The overarching objective of these Guidelines is to improve in the interests of all stakeholders the efficiency and effectiveness of cross-border proceedings relating to insolvency. . .by enhancing coordination and cooperation among courts under whose supervision such proceedings are being

conducted." The Cross-Border Guidelines then include a non-exhaustive list of guidelines to promote efficient coordination with the foreign court, protect stakeholders' interests, preserve the debtor's assets, and to share information to reduce costs, among others.

## IX.   CONCLUSION

101.    For the reasons stated herein, and as set forth in the Supporting Declarations, the Receiver respectfully requests that this Court recognize the Canadian Proceeding as a foreign main proceeding, and grant the relief requested herein, or, in the alternative, requests recognition as a foreign nonmain proceeding, and that the Court grant the relief requested herein.

Dated: September 30, 2020.                    Respectfully submitted,

                                             **MUNSCH HARDT KOPF & HARR, P.C.**

                                             By: */s/ John D. Cornwell*
                                             John D. Cornwell
                                             Texas Bar No. 24050450
                                             Grant M. Beiner
                                             Texas Bar No. 24116090
                                             700 Milam Street, Suite 2700
                                             Houston, Texas 77002
                                             Telephone: (713) 222-1470
                                             Facsimile: (713) 222-1475
                                             jcornwell@munsch.com
                                             gbeiner@munsch.com

                                             *Counsel for KPMG Inc., solely in its capacity as court-appointed receiver and manager of Q'Max Solutions Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on September 30, 2020. It was further served by electronic mail and by U.S. first-class mail on the parties set forth on the attached service list (at the electronic and physical mail addresses indicated thereon, as applicable).

                                             */s/ Grant M. Beiner*
                                             Grant M. Beiner

38

## MASTER SERVICE LIST

HSBC Bank Canada
c/o Cameron Bailey
7th Floor, 70 York Street
Toronto, Ontario
M5J 1S9

HSBC Bank Canada
c/o Louis R. Strubeck, Jr.
Julie G. Harrison
Norton Rose Fulbright
2200 Ross Avenue
Dallas, Texas  75201-7932
louis.strubeck@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

Business Development Bank of Canada
c/o HSBC Bank Canada, as Agent

Bank of Montreal
c/o HSBC Bank Canada, as Agent

Export Development Canada
c/o HSBC Bank Canada, as Agent

HSBC Bank USA
c/o HSBC Bank Canada, as Agent

Stephen Statham
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Stephen.Statham@usdoj.gov

Hector Duran
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Hector.Duran.Jr@usdoj.gov

M-I LLC
c/o John R. Keville
Michelle C. Replogle
Sheryl Falk
Michael C. Krill
Winston & Strawn, LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
jkeville@winston.com
mreplogle@winston.com
sfalk@winston.com
mkrill@winston.com

Atlas Energy Tower, LLC
c/o Michael L. Baum
Lauren K. Drawhorn
Liz D. Feldman
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 100
Dallas, TX 75204
michael.baum@wickphillips.com
lauren.drawhorn@wickphillips.com
liz.feldman@wickphillips.com

Boyar Miller
2925 Richmond Avenue 14th Floor
Houston, TX 77098
info@boyarmiller.com

Q'Max America, Inc.
Anchor Drilling Fluids USA, Inc.
c/o Jerrod Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, Texas  77002-4310
jarrod.martin@chamberlainlaw.com

Pinheironeto Advogados
228 Hamilton Avenue, 3rd Floor
Palo Alto, CA 94301
pna@pn.com

Moody's
7WTC at 250 Greenwich Street
New York, NY 10007
MISCollections@moodys.com

Sam's Passport
1811 Bering Drive, Suite 100
Houston, TX 77057
sam@samspassport.com

CSI International
Dep No. 556
P.O. Box 8000
Buffalo, NY 14201
sales@csi-international.com

Neilsen IP Law
609 Main Street, Suite 1925
Houston, TX 77002
info@nielseniplaw.com

PwC
111 5th Avenue SW, Suite 3100
Calgary, AB T2P 5L3
Canada
Ivan.p.williams@pwc.com

Paul Weiss
1285 Avenue of the Americas
NewYork, NY 10019
hrose@paulweiss.com

Foley & Lardner
1000 Louisiana Street, Suite 2000
Houston, TX 77002
cmarsden@foley.com

Baker Botts
Emaar Square, Building No. 6, 7th Floor
P.O. Box 23425
Dubai
United Arab Emirates
Andrina.boags@bakerbotts.com

Oanda
1441 Broadway
New York, NY 10018
frontdesk@oanda.com

McCarthy Tetrualt
66 Wellington Street West
Suite 5300, TD Bank Tower Box 48
Toronto ON M5K 1E6
Canada
info@mccarthy.ca

Softchoice
16609 Collections Center Drive
Chicago, IL 60693