**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**



| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 15 |
| | § | |
| Q'MAX SOLUTIONS INC., | § | |
| | § | Case No. 20-34791 (MI) |
| | § | |
| Debtor in a Foreign Proceeding. | § | |
| | § | |

**DECLARATION OF FOREIGN COUNSEL**
**UNDER PENALTY OF PERJURY**

I, Randal Van de Mosselaer, declare as follows:

1.      I am over the age of 18, and I am authorized to submit this declaration (the "Declaration") on behalf of my law firm and its client, the Receiver (as defined below).

2.      I am a Partner at Osler, Hoskin & Harcourt LLP ("Osler").  My office is located at Suite 2500,  TC Energy Tower, 450 – 1st Street S.W. Calgary, Alberta, Canada T2P 5H1. I graduated with an LL.B. from University of Saskatchewan in 1992, clerked to the Supreme Court of Canada in 1994, and was called to the bars of Saskatchewan in 1993 and Alberta in 1995.

3.      Osler represents KPMG Inc. ("KPMG"), in its capacity as court-appointed receiver and manager ("Receiver" or "Foreign Representative") of Q'Max Solutions Inc. ("QSI" or the "Debtor") pursuant to the *Consent Receivership Order* dated May 28, 2020 (the "Receivership Order"), entered by the Court of Queen's Bench of Alberta in Judicial Centre of Calgary, Alberta, Canada, Court File No. 2001-06722 (the "Canadian Court" and the "Canadian Proceeding") pending under Canada's Bankruptcy and Insolvency Act ("BIA").  I serve as lead counsel in the representation of the Receiver in the Canadian Proceeding.

4.      I submit this Declaration in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "<u>Verified Petition</u>"),[1] and the *Emergency Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 105(A) and 1519 of the Bankruptcy Code* (the "<u>TRO Application</u>"), filed contemporaneously herewith.

5.      As foreign representative, the Receiver has caused to be filed Official Form 401 chapter 15 petition for the Debtor in the above-referenced proceeding, the Verified Petition, the TRO Application, and certain other related filings.  Thereby, the Receiver seeks recognition of the Canadian Proceeding and, specifically, the Receivership Order, as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding as defined in chapter 15 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

6.      In relevant part, I understand from review of relevant filings that QSI, QCO, and QAI, as borrowers (the "<u>Borrowers</u>"); and HSBC Bank Canada, as administrative agent ("<u>HSBC</u>" or "<u>Agent</u>") for certain Lenders,[2] entered into a credit agreement in May 2014, which has been amended and restated and supplemented by various amending agreements (collectively, the "<u>Credit Agreement</u>").   Thereunder, the Agent alleges that, as of May 5, 2020, the total indebtedness of the Borrowers to the Lenders, inclusive of interest, was approximately (a) USD $145,381,623.21 plus CAD $1,228,668.47; (b) outstanding letters of credit in the amounts of USD $3,916,296.42 and CAD $1,161,408.79; and (c) other outstanding credit card balances, plus

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Verified Petition.
[2] The Agent acts on behalf of a syndicate of predominantly Canadian based lenders, currently comprised of HSBC, Bank of Montreal, Business Development Bank of Canada, Export Development Canada and HSBC Bank USA (collectively, and in such capacity, the "<u>Lenders</u>").  The Borrowers and Lenders are collectively referred to as the "<u>Loan Parties</u>".

accrued and accruing costs and disbursements, and interest continuing to accrue per diem (collectively, the "Indebtedness").

7.      On May 12, 2020, following approximately two years of extensive unsuccessful restructuring negotiations, the Agent, on behalf of the Lenders, issued to the Borrowers a demand letter that included notices of intention to enforce security under section 244(1) of the BIA and to accelerate the Indebtedness under the Credit Agreement.  On May 27, 2020, as expressly permitted by the GSAs, the Agent filed an *Application for Appointment of a Receiver* (the "Receivership Application") seeking the appointment of KPMG as receiver under section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c, B-3, section 13(2) of the Judicature Act, R.S.A. 2000 c J-2 (the "Judicature Act"), and 65(7) of the Personal Property Security Act, R.S.A. 2000, c P-7.  A true and correct copy of the Receivership Application is attached to this Declaration as **Exhibit A**.  In support thereof, the Agent caused to be filed the *Affidavit of Cameron Bailey*, assistant vice president, loan management unit for the Agent (the "HSBC Declaration").  A true and correct copy of the HSBC Declaration is attached to this Declaration as **Exhibit B**.

8.      On May 28, 2020, the Honorable Justice Grosse for the Canadian Court entered the Receivership Order pursuant to section 243 of the BIA and section 13(2) of the Judicature Act.  A true and correct copy of the Receivership Order signed by Justice Grosse is attached to this Declaration as **Exhibit C**.[3]

9.      The Receivership Order appointed the Receiver over the estates of the Canadian Debtors.  The Receivership Order specifically authorizes the Receiver to act "as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." (Receivership Order ¶ 31).  It empowers and authorizes the Receiver

---

[3] Based on reduced staffing and other pandemic-related issues affecting services, a "certified" copy of the Receivership Order could not be timely obtained, noting that delivery time is 8 to 10 weeks from ordering.

to take numerous steps involving the property of the entities subject to the Canadian Proceeding. (Receivership Order ¶ 3).  The Receivership Order grants the Receiver access to all of the Debtors' books, records, contracts, securities, and information. (Receivership Order ¶¶ 4-6).  Additionally, the Receivership Order imposes a stay of initiation or continuation of proceedings against the Receiver, the Debtor, and/or the other Canadian Debtors and their respective estates. (Receivership Order ¶¶ 7-11).

10.     The Receivership Order also grants the Receiver a charge (the "Receiver's Charge") on all of the Canadian Debtors' current and future assets, undertakings, and properties of every nature or kind whatsoever, and wherever located, including all proceeds thereof (collectively, the "Property") to secure payment of the reasonable fees and expenses of the Receiver and its counsel, not to exceed CAD $1,000,000 (or such greater amount as the Canadian Court may by further order authorize).  (Receivership Order ¶ 18).  The Receiver's Charge has the priority set forth in paragraph 18 of the Receivership Order.

11.     The Receivership Order further authorizes the Receiver to borrow, by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed CAD $8,000,000 (or such greater amount as the Canadian Court may by further order authorize) on the terms authorized therein. (Receivership Order ¶ 21).   The Canadian Court grants a charge (the "Receiver's Borrowings Charge") on the Property to secure payment of the monies borrowed, together with interest and charges thereon, by the Receiver pursuant to the Receivership Order.

12.     Consistent with section 14.06(1.2) of the BIA, the Receivership Order provides that "[t]he Receiver shall not be liable for any employee-related liabilities, including any successor employer liabilities . . . , other than such amounts as the Receiver may specifically agree in writing

to pay, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act* . . . ." (the "Receiver's Protections"). (Receivership Order ¶ 14).[4]

13.     The Receivership Order includes a request by the Canadian Court for "aid and recognition of any court . . . having jurisdiction in Canada or in any foreign jurisdiction . . . , to give effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." (Receivership Order ¶ 30).

14.     In light of the above, I have been asked by the Receiver to opine on whether the Canadian Proceeding, specifically including the Receivership Order, satisfies the definition of "foreign proceeding" set forth in the Bankruptcy Code, which defines a "foreign proceeding" as:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

15.     In the Canadian Proceeding, I believe that the affairs of the Debtor are "under a law relating to insolvency" through the BIA, and "subject to control or supervision by a foreign court for the purpose of reorganization or liquidation" through the appointment of the court-appointed Receiver by the Canadian Court.

---

[4] Section 14.06(1.2) of the BIA provides:
> Despite anything in federal or provincial law, if a trustee, in that position, carries on the business of a debtor or continues the employment of a debtor's employees, the trustee is not by reason of that fact personally liable in respect of a liability, including one as a successor employer,
> (a) that is in respect of the employees or former employees of the debtor or a predecessor of the debtor or in respect of a pension plan for the benefit of those employees; and
> (b) that exists before the trustee is appointed or that is calculated by reference to a period before the appointment.

16.     The BIA is one of two pieces of federal legislation in Canada applicable to bankruptcies and insolvencies.[5]  The BIA governs both voluntary and involuntary bankruptcy liquidations and provides for debtor reorganizations.

17.     The BIA also authorizes the appointment of a court-appointed receiver upon a secured creditor's application.  BIA at § 243(1).  Such court-appointed receivers are given a mandate and specific powers as set out in the order appointing the receiver.  These duties include: (a) taking possession and control of the property and assets of the debtor; (b) marketing and selling such property and assets in a commercially reasonable manner (whether as a going concern, en-bloc, or otherwise) and under the supervision and approval of the appointing court; and (c) distributing the proceeds of such sales to the stakeholders in accordance with the legal entitlement. The appointing court has broad discretion to authorize the receiver to "take any other action that the court considers advisable." *Id.* § 243(1)(c).

18.     Under the BIA, a court-appointed receiver is a "national" receiver, with the ability to administer assets in each of Canada's ten (10) provinces and three (3) territories, typically without further order of provincial courts.  The BIA and its related legislation the CCAA are federal legislation.  Provincial legislative jurisdiction governs property and civil rights, potentially affecting some insolvency-related matters.  Nonetheless, the BIA provides a statutory framework for a court-appointed receiver to carry out its mandate on a national basis without reliance on the various provincial statutes or courts for its authority.

---

[5] The second federal legislation in Canada concerning insolvencies is the *Companies' Creditors Arrangement Act* ("CCAA"), which affords financially troubled corporations the opportunity to restructure their financial affairs through a "Plan of Arrangement."  *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (Can.).  The CCAA process is akin to chapter 11 of the Bankruptcy Code, affording companies an opportunity to restructure operations rather than liquidate. *See In re Fracmaster, Ltd.*, 237 B.R. 627, 629 n.3 (Bankr. E.D. Tex. 1999).

19.     Pursuant to the Judicature Act, courts in Alberta are authorized to appoint a receiver when it is "just and convenient" on any terms and conditions the Alberta court deems to be just. Moreover, the Judicature Act codifies broad equitable powers of the court which allows it to provide for certain remedies, including the appointment of a receiver, where equitable. The powers and duties of a court-appointed receiver, pursuant to section 13(2) of the Judicature Act, is set out in the order appointing the receiver and may be tailored to the specific circumstances. Generally, such powers and/or duties will be the same or similar to a receiver appointed under the BIA as noted above.

20.     Accordingly, based on the Receivership Application, the HSBC Declaration, the Receivership Order, other pleadings entered of record in the Canadian Proceeding, and upon my review of sections 101(23) and (24) of the Bankruptcy Code, it is my professional opinion that the Canadian Proceeding satisfies the "foreign proceeding" definition of the Bankruptcy Code and that the Receiver is a qualified "foreign representative."

[Remainder of Page Intentionally Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted this 30th day of September, 2020,

**Osler, Hoskin & Harcourt LLP**

By: _____

Randal Van de Mosselaer, Partner
